**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Department of Justice<br>Antitrust Division<br>450 Fifth Street, N.W., Suite 4100<br>Washington, DC 20530 | Case No. 1:14-cv-2216 |
| Plaintiff, | |
| v. | |
| VERSO PAPER CORP.<br>6775 Lenox Center Court<br>Memphis, TN 38115 | |
| and | |
| NEWPAGE HOLDINGS INC.<br>8540 Gander Creek Drive<br>Miamisburg, OH 45342 | |
| Defendants. | |

## COMPLAINT

The United States of America brings this antitrust action to enjoin Verso Paper Corp. from acquiring NewPage Holdings Inc.  The proposed acquisition would likely substantially lessen competition in the manufacture and sale of coated freesheet web paper, coated groundwood paper, and label paper to customers in North America.  By acquiring NewPage, Verso would eliminate its foremost competitor in the sale of these products.

## I.  INTRODUCTION

1.  Both Verso and NewPage produce two types of coated publication papers – coated freesheet web paper and coated groundwood paper.  Post-acquisition, the combined company would control approximately 50 percent of the coated freesheet web market in North America, which accounts for more than $2 billion in sales, and 40 percent of the coated groundwood

market, which accounts for more than $3 billion in sales. Vigorous competition between Verso and NewPage has ensured a reliable supply of high-quality coated publication papers to North American purchasers at competitive prices. Verso's proposed acquisition of NewPage would eliminate this intense competition, and would likely increase the incentives of the merged firm – and the remaining firms in the market – to increase prices and reduce output.

2.      Verso and NewPage are the largest producers in North America of two types of label paper: cut-and-stack label paper and face sheet for pressure-sensitive labels. Post-acquisition, the combined company would control approximately 70 percent of the North American label-paper market, which accounts for approximately $350 million in sales. Verso has been a fierce competitor to NewPage, the leading seller of label paper. Customers have taken advantage of this competition by playing Verso and NewPage off each other to obtain more favorable prices. Verso's acquisition of NewPage would extinguish this competition.

## II.      JURISDICTION, VENUE, AND INTERSTATE COMMERCE

3.      The United States brings this action under Section 15 of the Clayton Act, 15 U.S.C. § 25, to prevent Verso and NewPage from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.

4.      This Court has subject-matter jurisdiction over this action under Section 15 of the Clayton Act, 15 U.S.C. § 25.

5.      Verso and NewPage are engaged in, and their activities substantially affect, interstate commerce. Collectively, the parties' 2013 coated freesheet web, coated groundwood, and label paper revenues in the United States were approximately $2.5 billion.

6.      Venue is proper in this District under Section 12 of the Clayton Act, 15 U.S.C. § 22. Both Verso and New Page are corporations that sell publication papers to

customers located in this District.  Verso and NewPage have consented to personal jurisdiction

and venue in this Court.

## III.     THE DEFENDANTS AND THE PROPOSED ACQUISITION

7.      Defendant Verso is a corporation headquartered in Memphis, Tennessee.  It

operates two mills that collectively produce coated freesheet web paper, coated groundwood

paper, label paper, and other types of paper.  Verso's mills are located in Maine and Michigan.  In

early December 2014, Verso closed its mill in Bucksport, Maine, which produced coated

groundwood paper.

8.      Defendant NewPage is a corporation headquartered in Miamisburg, Ohio.

NewPage operates eight mills that collectively produce coated freesheet web paper, coated

groundwood paper, label paper, and other types of paper.  These mills are located in Kentucky,

Maryland, Michigan, Minnesota, Wisconsin, and Maine.

9.      On January 3, 2014, Verso agreed to acquire NewPage in a transaction valued at

approximately $1.4 billion.

## IV.     THE COATED PAPER INDUSTRY

10.     Coated freesheet web paper and coated groundwood paper are coated on both

sides with a clay or other coating.  The coating gives the paper a smooth surface and glossy

appearance and allows for printing of high-quality graphics.

11.     Coated freesheet web paper is bright, heavier-weight glossy paper with excellent

print qualities that is used primarily for annual reports, magazine covers and premium

magazines, upscale brochures, and direct mail advertising.  Coated freesheet web paper is

produced for use in web printing applications.  Web printing is typically used for large, high-

speed printing jobs and requires paper rolls that are capable of being fed through the web

printing equipment.

12.     Coated groundwood paper is typically used for the interior pages of magazines and catalogues, the covers of low-cost magazines, and other medium-quality printing applications.  Together, coated freesheet web paper and coated groundwood paper are referred to in this complaint as "coated publication papers."

13.     Competition in the coated publication paper markets is driven by several factors, including head-to-head bidding between manufacturers to serve the particular needs of specific customers, and by capacity and demand conditions.  Producers individually negotiate most sales with customers.  Customers have varying preferences for coated publication papers due to the papers' varying characteristics, such as brightness, weight, printability, and smoothness. Customers often have specific requirements for the paper that they purchase, and customers typically evaluate each manufacturer's products and qualify their products before purchasing from that manufacturer.  Producers try to manufacture products that meet the needs of printers and end users.

14.     Demand for most coated publication papers in North America has declined over the last several years because of a significant decline in demand for magazines, catalogues, and other publications.  As a result, North American producers of coated publication papers have closed a number of mills and decommissioning of machines.  Declining demand for coated publication papers is projected to continue, as is the closing of mills and decommissioned machines.

15.     Label paper is typically used to make labels for certain consumer goods, such as canned foods or wine bottles.  Label paper is made from a type of freesheet paper that is coated on one side for printing, allowing the uncoated side to adhere to the product.

## V.        MARKET DEFINITION

### A.        Relevant Product Markets

#### 1.        Coated Freesheet Web Paper

16.        In the event of a small but significant and non-transitory price increase, purchasers of coated freesheet web paper are unlikely to substitute to other types of paper in sufficient quantities to make the price increase unprofitable because coated freesheet web paper has characteristics that distinguish it from other types of paper.  Some of these characteristics affect the appearance and performance of the product, whereas other characteristics affect the printing process for which the paper may be used.

17.        Coated freesheet web paper is therefore a relevant product market and line of commerce under Section 7 of the Clayton Act.

#### 2.        Coated Groundwood Paper

18.        In the event of a small but significant and non-transitory price increase, purchasers of coated groundwood paper are unlikely to substitute to other types of paper in sufficient quantities to make the price increase unprofitable because other papers are typically more expensive, have a different look and feel, or otherwise have characteristics that are undesirable for coated groundwood applications.

19.        Coated groundwood paper is therefore a relevant product market and line of commerce under Section 7 of the Clayton Act.

#### 3.        Label Paper

20.        In the event of a small but significant and non-transitory price increase, purchasers of label paper are unlikely to substitute to other kinds of paper in sufficient quantities to make the price increase unprofitable because label paper produces a high-quality appearance, is coated on only one side, and has other desirable characteristics.  Purchasers of label paper are

also unlikely to substitute to other label options in sufficient quantities to make the price increase unprofitable because changing the type of label could require a change in the product's container or packaging.

21.     Label paper is therefore a relevant product market and line of commerce under Section 7 of the Clayton Act.

### B.     Relevant Geographic Market

22.     The relevant geographic market for analyzing the likely effects of the proposed acquisition on the sale of each relevant product is no larger than the United States and Canada (referred to here as "North America," consistent with usage in the paper industry).

23.     Defining a geographic market based on the location of customers is appropriate where, as here, (1) producers charge different prices based on customer location, and (2) arbitrage by customers is difficult.

24.     For each relevant product, producers typically negotiate individual prices with each customer. Arbitrage is impractical because a customer in North America would need to find the product with the particular characteristics it requires from a customer outside of North America who has purchased that product at a significantly lower price to allow for shipping costs to North America. Furthermore, the additional costs of re-handling and re-shipping the product make arbitrage prohibitively expensive. Finally, a customer purchasing through arbitrage loses valuable services that producers often provide, such as inventory management, warranties, and technical support.

25.     In the event of a small but significant and non-transitory price increase, purchasers of each relevant product in North America are unlikely to defeat the price increase. North America is therefore a relevant geographic market for each relevant product under Section 7 of the Clayton Act.

## VI.   THE PROPOSED ACQUISITION WOULD LIKELY LEAD TO ANTICOMPETITIVE EFFECTS IN COATED PUBLICATION PAPERS

26.   The proposed acquisition would likely significantly increase market concentration, eliminate head-to-head competition between Verso and NewPage, increase incentives to raise prices and reduce output, and facilitate accommodating conduct by competitors in the sale of coated publication papers.

27.   The proposed acquisition would significantly increase market concentration for coated publication papers.  Market concentration is a useful indicator of the level of competitive vigor in a market and the likely competitive effects of a proposed acquisition.  The more concentrated a market, and the more a transaction would increase market concentration, the more likely it is that the transaction would substantially reduce competition.  Concentration in relevant markets is typically measured by the Herfindahl-Hirschman Index (HHI).  Markets in which the post-merger HHI is above 2,500 are considered highly concentrated.  Mergers that increase the HHI by more than 200 points and result in a highly concentrated market are presumed likely to create or enhance market power.  Markets in which the post-merger HHI is between 1,500 and 2,500 are considered moderately concentrated.  Mergers that increase the HHI by more than 100 points and result in a moderately concentrated market potentially raise significant competitive concerns.

28.   NewPage and Verso are the first and third largest competitors in the North American coated freesheet web paper market.  New Page accounts for approximately 30 percent of market sales, and Verso accounts for approximately 20 percent.  Post-merger, the merged firm would have an approximately 50 percent share, and with the next largest supplier, would account for approximately 80 percent of market sales.

29.   The proposed acquisition would result in a highly concentrated market for coated freesheet web paper, with a post-merger HHI of approximately 3,500.  The proposed acquisition

would increase the HHI by approximately 1,200, and thus significantly increase market concentration.

30.     NewPage and Verso are the first and second largest competitors in the North American coated groundwood market.  NewPage and Verso each account for approximately 20 percent of market sales.  Post-merger, the combined firm would have an approximately 40 percent share.

31.     The proposed acquisition would result in a moderately concentrated market with a post-merger HHI of approximately 2,200.  The acquisition would increase the HHI by approximately 800, and thus significantly increase market concentration.

32.     Verso and NewPage have frequently competed for sales to coated publication paper customers.  The proposed acquisition would eliminate this head-to-head competition.

33.     The proposed acquisition would also increase Verso's incentive and ability to raise price and reduce output of coated publication papers.  Consequently, the acquisition would likely lead to increased downtime, accelerated mill closures, and reduced output in North America.

34.     The acquisition would likely facilitate accommodating conduct by competitors, leading to increased prices and reduced output.  Despite the differentiated nature of coated publication paper markets, these markets are conducive to accommodating conduct by competitors.  A small number of producers dominate the industry, and producers regularly obtain information from customers about their options and competitors' prices and product availability.

## VII.    THE PROPOSED ACQUISITION WOULD LIKELY LEAD TO ANTICOMPETITIVE EFFECTS IN THE LABEL-PAPER MARKET

35.     The proposed acquisition likely would substantially lessen competition in the sale of label paper.  The acquisition would substantially increase market concentration and eliminate the head-to-head competition between Verso and NewPage.

36.     NewPage accounts for approximately 60 percent of the market and Verso accounts for approximately 10 percent.  Post-acquisition, the combined firm would have approximately a 70 percent share.  The proposed acquisition is presumptively anticompetitive because it would substantially increase market concentration in the already highly concentrated label-paper market from approximately 3,800 to 5,300.

37.     Customers have played Verso and NewPage off each other in negotiations to obtain lower prices and better products and service.  If the acquisition were completed, customers would no longer be able to do so, likely enabling the combined firm to raise prices and eliminating beneficial non-price competition between Verso and NewPage.

## VIII.    ABSENCE OF COUNTERVAILING FACTORS

38.     Entry by new competitors or expansion by existing competitors is unlikely to be timely or sufficient in scope to prevent the proposed acquisition's likely anticompetitive effects. Entry into publication papers is unlikely due to the declining demand for coated publication papers and the high cost of building a new coated paper mill.  Entry into label papers is costly, uncertain, and time-consuming, as successful entrants need to test and qualify each new product with each major customer.

39.     Supply responses from overseas manufacturers are unlikely to prevent a substantial lessening of competition.  Prices are generally higher for imports than for domestic products.  Furthermore, foreign producers are limited by commitments to more profitable local markets; by significant transportation costs and logistical issues; by customers' exacting product specifications and preferences for short lead times; and by fluctuations in currency exchange rates, which disrupt consumer preferences for stable supply relationships.

40.    The acquisition is unlikely to produce sufficient merger-specific, cognizable efficiencies that Verso would pass through to consumers to reverse the acquisition's likely anticompetitive effects.

## IX.    VIOLATION ALLEGED

41.    The effect of the proposed acquisition, if completed, would likely be to substantially lessen competition in interstate trade and commerce in the relevant markets, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

42.    Unless enjoined, the proposed acquisition likely would have the following effects in each of the relevant markets:

(a)    competition between Verso and NewPage would be eliminated;

(b)    competition would likely be substantially lessened;

(c)    prices would likely be higher than they otherwise would; and

(d)    output would likely be lower than it otherwise would.

## X.    REQUEST FOR RELIEF

43.    The United States requests that the Court:

(a)    judge Verso's proposed acquisition of NewPage to violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

(b)    permanently enjoin Verso from acquiring any of the assets of NewPage or engaging in any other transaction that would combine the two companies;

(c)    award Plaintiff the costs of this action; and

(d)    award Plaintiff other just and proper relief.

December 31 , 2014.

Respectfully Submitted,

FOR PLAINTIFF UNITED STATES OF AMERICA:

_____
WILLIAM J. BAER
Assistant Attorney General for Antitrust

_____
DAVID I. GELFAND
Deputy Assistant Attorney General

_____
PATRICIA A. BRINK
Director of Civil Enforcement

_____
PETER J. MUCCHETTI
Chief, Litigation I

_____
RYAN M. KANTOR
Assistant Chief, Litigation I

_____
KARL D. KNUTSEN
Attorney
Litigation I
Antitrust Division
U.S. Department of Justice
450 Fifth Street, N.W., Suite 4100
Washington, DC  20530
Phone:  (202) 514-0976
Facsimile:  (202) 305-1190
E-mail: karl.knutsen@usdoj.gov

SHOBITHA BHAT
SCOTT I. FITZGERALD
BARRY JOYCE
MICHAEL T. KOENIG
RICHARD MARTIN
AMBER J. MOREN
PAUL TORZILLI (DC BAR # 986767)