**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>VERSO PAPER CORP., and<br>NEWPAGE HOLDINGS INC.,<br><br>    Defendants. | Case No. 1:14-cv-2216 |

## PROPOSED FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint on December 31, 2014, the United States and defendants, Verso Paper Corp. and NewPage Holdings Inc., by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by the Defendants to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires Defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to the United States that the divestitures required below can and will be made and that Defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I.  Jurisdiction

This Court has jurisdiction over the subject matter of and each of the parties to this action.  The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II.  Definitions

As used in this Final Judgment:

A.      "Acquirer(s)" means Catalyst or another entity or entities to whom Defendants divest the Divestiture Mills.

B.      "Catalyst" means Catalyst Paper Corporation, a Canadian corporation with its headquarters in Richmond, British Columbia, Canada, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C.      "Defendants" means NewPage and Verso.

D.      "Divestiture Mills" means NewPage's pulp and paper mill located at 35 Hartford Street, Rumford, Maine 04276 (the "Rumford Mill"); and NewPage's pulp and paper mill

located at 621 North Biron Drive, Wisconsin Rapids, Wisconsin 54495 (the "Biron Mill")

(subject to the exclusions in Section II( D)(3) below), including:

1. All tangible assets necessary to operate, used in or for, or devoted to the

Divestiture Mills including, but not limited to, all manufacturing equipment, tooling and fixed

assets, real property (leased or owned), personal property, inventory, reserves, office furniture,

information technology systems, materials, supplies, and other tangible property and all assets

used exclusively in connection with the Divestiture Mills; all licenses, permits and authorizations

issued by any governmental organization relating to the Divestiture Mills; all contracts, teaming

arrangements, agreements, leases (including renewal rights), commitments, certifications, and

understandings relating to the Divestiture Mills, including supply agreements; all customer lists,

contracts, accounts, and credit records; all repair and performance records and all other records

relating to the Divestiture Mills.

2. All intangible assets necessary to operate, used in or for, or devoted to the

Divestiture Mills, including, but not limited to, all patents, licenses and sublicenses, intellectual

property, copyrights, trademarks, trade names, service marks, service names, technical

information, computer software and related documentation, know-how, trade secrets, drawings,

blueprints, designs, design protocols, specifications for materials, specifications for parts and

devices, safety procedures for the handling of materials and substances, quality assurance and

control procedures, environmental studies and assessments, design tools and simulation

capability, all manuals and technical information Defendants provide to their own employees,

customers, suppliers, agents or licensees, and all research data concerning historic and current

research and development efforts relating to the Divestiture Mills, including, but not limited to,

designs of experiments, and the results of successful and unsuccessful designs and experiments.

    3. "Divestiture Mills" does not include the Wisconsin Rapids pulp mill, the Consolidated Water Power Company, the Sterling trade name and trademark, and the NewPage Research and Development facility at 300 N. Biron Drive, Wisconsin Rapids, Wisconsin, 54494.

  E.  "NewPage" means Defendant NewPage Holdings Inc., a Delaware corporation with its headquarters in Miamisburg, Ohio, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

  F.  "Verso" means Defendant Verso Paper Corp., a Delaware corporation with its headquarters in Memphis, Tennessee, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

### III. <u>Applicability</u>

  A.  This Final Judgment applies to Verso and NewPage, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

  B.  If, prior to complying with Section IV and V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Mills, they shall require the Acquirer(s) to be bound by the provisions of this Final Judgment.  Defendants need not obtain such an agreement from the Acquirer(s) of the assets divested pursuant to this Final Judgment.

### IV. <u>Divestitures</u>

A.      Defendants are ordered and directed, within ten (10) calendar days after the

signing of the Hold Separate Stipulation and Order in this matter, to divest the Divestiture Mills

in a manner consistent with this Final Judgment to an Acquirer(s) acceptable to the United

States, in its sole discretion.  The United States, in its sole discretion, may agree to one or more

extensions of this time period not to exceed sixty (60) calendar days in total, and shall notify the

Court in such circumstances.  Defendants agree to use their best efforts to divest the Divestiture

Mills as expeditiously as possible.

B.      Defendants must first attempt to sell the Divestiture Mills to Catalyst. In the event

that the sale to Catalyst fails, and Defendants attempt to sell the Divestiture Mills to an

Acquirer(s) other than Catalyst, Defendants promptly shall make known, by usual and customary

means, the availability of the Divestiture Mills for sale.  Defendants shall inform any person

making inquiry regarding a possible purchase of the Divestiture Mills that they are being

divested pursuant to this Final Judgment and provide that person with a copy of this Final

Judgment.

C.      In accomplishing the divestiture ordered by this Final Judgment, Defendants shall

offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all

information and documents relating to the Divestiture Mills customarily provided in a due

diligence process, except such information or documents subject to the attorney-client privilege

or work-product doctrines.  Defendants shall make available such information to the United

States at the same time that such information is made available to any other person.

D.      Defendants shall permit all prospective Acquirers to have reasonable access to personnel and to make inspections of the physical facilities of the Divestiture Mills; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process, except such information or documents subject to the attorney-client privilege or work-product doctrines.

E.      Defendants shall provide the Acquirer(s) of the Divestiture Mills and the United States information relating to the personnel involved in the management, production or sales activities of the Divestiture Mills to enable the Acquirer(s) to make offers of employment. Defendants will not interfere with any negotiations by the Acquirer(s) to employ any Defendant employee whose primary responsibility is the management, production, distribution or sales activities of the Divestiture Mills. Defendants shall waive all non-compete agreements for any current or former employee whom the Acquirer(s) employs with relation to the Divestiture Mills.

F.      Defendants shall warrant to the Acquirer(s) that each of the Divestiture Mills will be operational on the date of sale.

G.      Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Mills.

H.      At the option of the Acquirer and on terms and conditions acceptable to the United States in its sole discretion, Defendants shall enter into a Supply Agreement for the sale of bleached softwood kraft pulp and a Service Agreement for the provision of waste and wastewater disposal services to the acquirer of the Biron Mill sufficient to meet all or part of the Acquirer's needs.  Price under the Supply Agreement shall be set using a methodology consistent

with the methodology that Defendants historically have used in setting transfer prices for

bleached softwood kraft pulp and waste and wastewater disposal services provided to the Biron

Mill (in each case, with appropriate overhead costs removed).   Defendants shall designate

employees, other than Defendants' senior managers or employees engaged in sales and

marketing, to implement any such Supply Agreement and shall prevent disclosure of any

confidential, proprietary, or business-sensitive information of the Acquirer(s) to any other

employees of Defendants except as necessary to implement the Supply Agreement.

      I.      At the option of the Acquirer(s) and on terms and conditions acceptable to the

United States in its sole discretion, Defendants shall enter into a Transition Services Agreement

based upon commercially reasonable terms and conditions.  Such an agreement may not exceed

twelve (12) months from the date of divestiture except as approved by the United States in its

sole discretion.  Transition services may include information technology support, information

technology licensing, computer operations, data processing, logistics support, wood purchasing,

and such other services as reasonably necessary to operate the Divestiture Mills.  Any

amendments to or modifications of the Transition Services Agreement may only be entered into

with the approval of the United States in its sole discretion.

      J.      Defendants shall warrant to the Acquirer(s) that there are no material defects in

the environmental, zoning or other permits pertaining to the operation of each asset, and that

following the sale of the Divestiture Mills, Defendants will not undertake, directly or indirectly,

any challenges to the environmental, zoning, or other permits relating to the operation of the

Divestiture Mills.

      K.      Unless the United States otherwise consents in writing, the divestiture pursuant to

Section IV, or by Divestiture Trustee appointed pursuant to Section V, of this Final Judgment, shall include the entirety of the Divestiture Mills, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Mills can and will be used by the Acquirer(s) as part of a viable, ongoing business of the production, distribution and sale of coated freesheet web paper, coated groundwood paper, and cut-and-stack label paper and face sheet for pressure sensitive labels in North America.  Divestiture of the Divestiture Mills may be made to one or more Acquirers, provided that in each instance it is demonstrated to the sole satisfaction of the United States that the Divestiture Mills will remain viable and the divestiture of such assets will remedy the competitive harm alleged in the Complaint.  The divestitures, whether pursuant to Section IV or Section V of this Final Judgment,

     (1)    shall be made to an Acquirer(s) that, in the United States' sole judgment, has the intent and capability (including the necessary managerial, operational, technical and financial capability) of competing effectively in the business of the production, distribution and sale of coated freesheet web paper, coated groundwood paper, and cut-and-stack label paper and face sheet for pressure sensitive labels; and

     (2)    shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between an Acquirer and Defendants gives Defendants the ability unreasonably to raise the costs of the Acquirer(s), to lower the efficiency of the Acquirer(s) or otherwise to interfere in the ability of the Acquirer(s) to compete effectively.

## V. <u>Appointment of Divestiture Trustee</u>

A.      If Defendants have not divested the Divestiture Mills within the time period

specified in Section IV(A) of this Final Judgment, Defendants shall notify the United States of

that fact in writing.  Upon application of the United States, the Court shall appoint a Divestiture

Trustee selected by the United States and approved by the Court to effect the divestiture of the

Divestiture Mills.

B.      After the appointment of a Divestiture Trustee becomes effective, only the

Divestiture Trustee shall have the right to sell the Divestiture Mills. The Divestiture Trustee shall

have the power and authority to accomplish the divestiture to an Acquirer(s) acceptable to the

United States at such price and on such terms as are then obtainable upon reasonable effort by

the Divestiture Trustee, subject to the provisions of Sections IV, V, and VI of this Final

Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section

V(D), the Divestiture Trustee may hire, at the expense of Defendants, any investment bankers,

attorneys, or other agents, who shall be solely accountable to the Divestiture Trustee, reasonably

necessary in the Divestiture Trustee's judgment to assist in the divestiture.  Any such investment

bankers, attorneys, or other agents shall serve on such terms and conditions as the United States

approves including confidentiality requirements and conflict of interest certifications.

C.      Defendants shall not object to a sale by the Divestiture Trustee on any ground

other than the Divestiture Trustee's malfeasance.  Any such objections by Defendants must be

conveyed in writing to the United States and the Divestiture Trustee within ten (10) calendar

days after the Divestiture Trustee has provided the notice required under Section VI of this Final

Judgment.

D.      The Divestiture Trustee shall serve at the expense of Defendants pursuant to a

written agreement, on such terms and conditions as the United States approves, including

confidentiality requirements and conflict of interest certifications.  The Divestiture Trustee shall

account for all monies derived from the sale of the assets sold by the Divestiture Trustee and all

costs and expenses so incurred.  After approval by the Court of the Divestiture Trustee's

accounting, including fees for its services yet unpaid and those of any professionals and agents

retained by the Divestiture Trustee, all remaining money shall be paid to Defendants and the trust

shall then be terminated.  The compensation of the Divestiture Trustee and any professionals and

agents retained by the Divestiture Trustee shall be reasonable in light of the value of the

Divestiture Mills and based on a fee arrangement providing the Divestiture Trustee with an

incentive based on the price and terms of the divestiture and the speed with which it is

accomplished, but timeliness is paramount. If the Divestiture Trustee and Defendants are unable

to reach agreement on the Divestiture Trustee's or any agents' or consultants' compensation or

other terms and conditions of engagement within fourteen (14) calendar days of appointment of

the Divestiture Trustee, the United States may, in its sole discretion, take appropriate action,

including making a recommendation to the Court.  The Divestiture Trustee shall, within three (3)

business days of hiring any other professionals or agents, provide written notice of such hiring

and the rate of compensation to Defendants and the United States.

E.      Defendants shall use their best efforts to assist the Divestiture Trustee in

accomplishing the required divestiture.  The Divestiture Trustee and any consultants,

accountants, attorneys, and other agents retained by the Divestiture Trustee shall have full and

complete access to the personnel, books, records, and facilities of the business to be divested, and Defendants shall develop financial and other information relevant to such business as the Divestiture Trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information or any applicable privileges.  Defendants shall take no action to interfere with or to impede the Divestiture Trustee's accomplishment of the divestiture.

F.      After its appointment, the Divestiture Trustee shall file monthly reports with the United States and, as appropriate, the Court, setting forth the Divestiture Trustee's efforts to accomplish the divestiture ordered under this Final Judgment.  To the extent such reports contain information that the Divestiture Trustee deems confidential, such reports shall not be filed in the public docket of the Court.  Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Mills, and shall describe in detail each contact with any such person.  The Divestiture Trustee shall maintain full records of all efforts made to divest the Divestiture Mills.

G.      If the Divestiture Trustee has not accomplished the divestiture ordered under this Final Judgment within six (6) months after its appointment, the Divestiture Trustee shall promptly file with the Court a report setting forth (1) the Divestiture Trustee's efforts to accomplish the required divestiture, (2) the reasons, in the Divestiture Trustee's judgment, why the required divestiture has not been accomplished, and (3) the Divestiture Trustee's recommendations.  To the extent such report contains information that the Divestiture Trustee

deems confidential, such report shall not be filed in the public docket of the Court.  The

Divestiture Trustee shall at the same time furnish such report to the United States, which shall

have the right to make additional recommendations consistent with the purpose of the trust.  The

Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of

the Final Judgment, which may, if necessary, include extending the trust and the term of the

Divestiture Trustee's appointment by a period requested by the United States.

H.      If the United States determines that the Divestiture Trustee has ceased to act or

failed to act diligently or in a reasonably cost-effective manner, it may recommend the Court

appoint a substitute Divestiture Trustee.

## VI.  <u>Notice of Proposed Divestiture</u>

A.      If the divestitures required herein are not made to Catalyst under the terms of a

definitive divestiture agreement previously submitted to the United States, then within two (2)

business days following execution of a definitive divestiture agreement, Defendants or the

Divestiture Trustee, whichever is then responsible for effecting the divestiture required herein,

shall notify the United States of any proposed divestiture required by Section IV or V of this

Final Judgment.  If the Divestiture Trustee is responsible, it shall similarly notify Defendants.

The notice shall set forth the details of the proposed divestiture and list the name, address, and

telephone number of each person not previously identified who offered or expressed an interest

in or desire to acquire any ownership interest in the Divestiture Mills, together with full details of

the same.

B.      Within fifteen (15) calendar days of receipt by the United States of such notice,

the United States may request from Defendants, the proposed Acquirer(s), any other third party,

or the Divestiture Trustee, if applicable, additional information concerning the proposed

divestiture, the proposed Acquirer(s), and any other potential Acquirer(s).  Defendants and the

Divestiture Trustee shall furnish any additional information requested, except such information

or documents subject to the attorney-client privilege or work-product doctrine, within fifteen

(15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

      C.     Within thirty (30) calendar days after receipt of the notice or within twenty (20)

calendar days after the United States has been provided the additional information requested

from Defendants, the proposed Acquirer(s), any third party, and the Divestiture Trustee,

whichever is later, the United States shall provide written notice to Defendants and the

Divestiture Trustee, if there is one, stating whether or not it objects to the proposed divestiture.

If the United States provides written notice that it does not object, the divestiture may be

consummated, subject only to Defendants' limited right to object to the sale under Section V(C)

of this Final Judgment.  Absent written notice that the United States does not object to the

proposed Acquirer(s) or upon objection by the United States, a divestiture proposed under

Section IV or Section V of this Final Judgment shall not be consummated.  Upon objection by

Defendants under Section V(C), a divestiture proposed under Section V shall not be

consummated unless approved by the Court.  Notwithstanding the foregoing provisions of this

Section VI, the United States, in its sole discretion, may withhold its approval of the proposed

divestiture of a single Divestiture Mill until such time as the United States concludes that it can

approve an Acquirer(s) for both Divestiture Mills consistent with the terms of the Final

Judgment.

## VII. <u>Financing</u>

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

## VIII. <u>Hold Separate</u>

Until the divestiture required by this Final Judgment has been accomplished, Defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court.  Defendants shall take no action that would jeopardize the divestiture ordered by this Court.

## IX. <u>Affidavits</u>

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or V of this Final Judgment, Defendants shall deliver to the United States an affidavit as to the fact and manner of its compliance with Section IV or V.  Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Mills, and shall describe in detail each contact with any such person during that period.  Each such affidavit shall also include a description of the efforts Defendants have taken to solicit buyers for the Divestiture Mills, and to provide required information to all prospective Acquirers, including the limitations, if any, on such information.  Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by Defendants, including limitation on information, shall be made within fourteen (14)

-14-

calendar days of receipt of such affidavit.

B.      Within twenty (20) calendar days of the filing of the Complaint in this matter,

Defendants shall deliver to the United States an affidavit that describes in reasonable detail all

actions Defendants have taken and all steps Defendants have implemented on an ongoing basis

to comply with Section VIII of this Final Judgment.  Defendants shall deliver to the United

States an affidavit describing any changes to the efforts and actions outlined in Defendants'

earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change

is implemented.

C.      Defendants shall keep all records of all efforts made to preserve and divest the

Divestiture Mills until one year after such divestiture has been completed.

## X. <u>Appointment of Monitoring Trustee</u>

A.      Upon application of the United States, the Court shall appoint a Monitoring

Trustee selected by the United States and approved by the Court.

B.      The Monitoring Trustee shall have the power and authority to monitor

Defendants' compliance with the terms of this Final Judgment and the Hold Separate Stipulation

and Order entered by this Court, and shall have such other powers as this Court deems

appropriate.  The Monitoring Trustee shall be required to investigate and report on the

Defendants' compliance with this Final Judgment and the Hold Separate Stipulation and Order

and the Defendants' progress toward effectuating the purposes of this Final Judgment, including,

but not limited to, any breach or other problem that arises under any Supply Agreement or

Transition Services Agreement that may adversely affect the accomplishment of the purposes of

this Final Judgment, the reasons for such breach or problem, and recommended remedies.

C.      Subject to Section X(E) of this Final Judgment, the Monitoring Trustee may hire at the cost and expense of Defendants any consultants, accountants, attorneys, or other agents, who shall be solely accountable to the Monitoring Trustee, reasonably necessary in the Monitoring Trustee's judgment.  Any such consultants, accountants, attorneys, or other agents shall serve on such terms and conditions as the United States approves including confidentiality requirements and conflict of interest certifications.

D.      Defendants shall not object to actions taken by the Monitoring Trustee in fulfillment of the Monitoring Trustee's responsibilities under any Order of this Court on any ground other than the Monitoring Trustee's malfeasance.  Any such objections by Defendants must be conveyed in writing to the United States and the Monitoring Trustee within ten (10) calendar days after the action taken by the Monitoring Trustee giving rise to Defendants' objection.

E.      The Monitoring Trustee shall serve at the cost and expense of Defendants pursuant to a written agreement with Defendants and on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications. The compensation of the Monitoring Trustee and any consultants, accountants, attorneys, and other agents retained by the Monitoring Trustee shall be on reasonable and customary terms commensurate with the individuals' experience and responsibilities.  If the Monitoring Trustee and Defendants are unable to reach agreement on the Monitoring Trustee's or any agents' or consultants' compensation or other terms and conditions of engagement within fourteen (14) calendar days of appointment of the Monitoring Trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court.  The

Monitoring Trustee shall, within three (3) business days of hiring any consultants, accountants, attorneys, or other agents, provide written notice of such hiring and the rate of compensation to Defendants and the United States.

F.     The Monitoring Trustee shall have no responsibility or obligation for the operation of Defendants' businesses.

G.     Defendants shall use their best efforts to assist the Monitoring Trustee in monitoring Defendants' compliance with their individual obligations under this Final Judgment and under the Hold Separate Stipulation and Order.  The Monitoring Trustee and any consultants, accountants, attorneys, and other agents retained by the Monitoring Trustee shall have full and complete access to the personnel, books, records, and facilities relating to compliance with this Final Judgment, subject to reasonable protection for trade secret or other confidential research, development, or commercial information or any applicable privileges. Defendants shall take no action to interfere with or impede the Monitoring Trustee's accomplishment of its responsibilities.

H.     After its appointment, the Monitoring Trustee shall file reports monthly for the first year and at the end of each year thereafter, or more frequently as needed, with the United States, and, as appropriate, the Court, setting forth Defendants' efforts to comply with their obligations under this Final Judgment and under the Hold Separate Stipulation and Order.  To the extent such reports contain information that the Monitoring Trustee deems confidential, such reports shall not be filed in the public docket of the Court.

I.     The Monitoring Trustee shall serve for two years.  The Monitoring Trustee's term may be extended for one (1) additional year, in the sole discretion of the United States.

J.      If the United States determines that the Monitoring Trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, it may recommend that the Court appoint a substitute Monitoring Trustee.

## XI.  **Compliance Inspection**

A.      For the purposes of determining or securing compliance with this Final Judgment, or of any related orders such as the Hold Separate Stipulation and Order, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

(1)    access during Defendants' office hours  to inspect and copy, or at the option of the United States, to require Defendants to provide hard copies or electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

(2)    to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters.  The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.      Upon the written request of an authorized representative of the Assistant Attorney

General in charge of the Antitrust Division, Defendants shall submit written reports or response to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.      No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If at the time information or documents are furnished by Defendants to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(g) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(g) of the Federal Rules of Civil Procedure," then the United States shall give Defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XII.  <u>No Reacquisition</u>

Defendants may not reacquire any part of the Divestiture Mills during the term of this Final Judgment.

## XIII.  <u>Retention of Jurisdiction</u>

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and

to punish violations of its provisions.

## XIV. <u>Expiration of Final Judgment</u>

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry.

## XV. <u>Public Interest Determination</u>

The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date:  12/11/2015

Court approval subject to procedures of Antitrust
Procedures and Penalties Act, 15 U.S.C. § 16.

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge